GENTILE BROS. CO. v. ROSE et al.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1925.)

No. 4294.

**1. Sales ☞29—Contract held not invalid because of failure to sign duplicate.**

A contract of sale, intended to be executed in duplicate, and reciting that "the parties hereto have interchangeably set their hands," *held* not invalid because, through inadvertence, some of the parties failed to sign one of the duplicates; the other being properly signed by all, and delivered.

**2. Sales ☞384(2) — Measure of damages for breach of contract for purchase of peaches by buyer, stated.**

Under a contract for the purchase of peaches from the growers, which necessarily implied that they should be shipped as they matured to proper shipping condition, the measure of damages for breach by the buyer, by refusing to accept further shipments, was the difference between the contract price and the market prices at the day to day periods when the later shipments were made.

In Error to the District Court of the United States for the Eastern District of Tennessee; Xenophon Hicks, Judge.

At Law. Action by C. W. Rose and J. O. Brown against the Gentile Bros. Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

R. B. Cassell, of Harriman, Tenn. (J. H. Frantz, of Knoxville, Tenn., on the brief), for plaintiff in error.

L. D. Smith, of Knoxville, Tenn., for defendants in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. The plaintiff in error (defendant below) was vendee in a written contract with a group of peach growers to buy the season's crop. The vendors

were named only as the "undersigned." Rose and Brown (plaintiffs below) were leading growers in the vicinity and active in the negotiations. The written contract was intended to be in duplicate. The vendee's agent took his duplicate away with him; it was not signed by Rose and Brown. The other duplicate was left in the local bank for the convenience of the vendors. Later the vendee, after accepting some, refused to take more shipments from Rose and Brown, claiming that there was no contract with them; and the duplicate in the bank was found to have their signatures, among the vendors. The controlling question of fact was whether their signatures were attached to the paper before the parties had jointly accepted it as a completed contract and deposited it with the bank. The jury found this issue in favor of Rose and Brown.

[1] Aside from asking us to consider the weight of the evidence, which we cannot do, the brief for plaintiff in error chiefly urges that the contract was invalid until both duplicates were signed. We know of no such rule. Of course, in a particular case it may be the agreement of the parties that a contract shall not be valid until reduced to writing and signed in duplicate; but whether there was any such understanding in this case was a question of fact to be submitted to the jury under proper instructions; and there was no exception to the instructions bearing thereon. The point presented to the court, and as to which an exception was taken, was that, because the contract recited that "the parties hereto have interchangeably set their hands," a duplicate execution was required by law.

The presence of the word "interchangeably" does tend to show an intention that each party should have a completed duplicate; but it goes no further. We do not see that it makes invalid one completed contract, signed and delivered, because one of several signatures is inadvertently omitted from the other duplicate; and plaintiffs recovered on the theory that they intended to sign and supposed they had signed both.

[2] Complaint is also made as to the measure of damages. When the peach shipping season came on, the vendee took some shipments from Rose and Brown, and then refused to take any more. The remainder of the crop they shipped from day to day over a period lasting, it would seem, some two weeks. The jury was instructed, in effect, that the measure of damages was the difference between the contract price and the market prices at the day to day periods when the later shipments were made. The vendee claims that the day of its refusal and notice that it would take no more was the critical time. There is no dispute about the rule of law that the damages should be measured as of the time or times when the goods ought to have been accepted, save that, if no time was fixed for acceptance, then, under some circumstances, the date of the anticipatory breach may be adopted. There is no doubt that this contract fixed the time for acceptance, although not in express words. Both parties must have contemplated that the peaches would be delivered and accepted when they were in proper shipping condition, and that this would be as they gradually and from day to day, on particular trees and of particular varieties, sufficiently matured, and that these deliveries would thus be from day to day over an indefinite but short period. Giving this necessary construction to the contract, the right measure of damages was applied.

When the contract was made, the vendee deposited in the local bank $10,000, as an advance payment or guaranty, to the vendors. Upon the trial it was claimed that, if the contract was found valid, and plaintiffs' damages assessed, there should be a credit for plaintiffs' pro rata share of this payment. The evidence did not justify such credit. There is no proof as to what became of this deposit, nor that it was not all paid out or appropriated, as would be natural, to those vendors who did ship and whose shipments were accepted. If in fact any portion of this deposit remains in the bank, and has not been paid out for the benefit of vendee, nor become duly appropriated to any other use, the vendee can have it applied as a payment on the judgment.

Rose and Brown lived in Tennessee. The market place was Cincinnati. They had no knowledge of market prices. They were permitted to testify to what they received from other purchasers in Cincinnati at the later shipment dates. If this testimony stood alone, it might have been inadmissible because incompetent; but it was supplemented by other testimony from Cincinnati commission merchants, showing that the prices received were the market prices on those dates. No harm could come from permitting the vendors to show that they actually received the full market price. There was no prejudicial error in receiving this testimony.

We have considered the other errors alleged, but think they do not require separate mention.

The judgment is affirmed.